[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Two separate appeals have been consolidated in this case and are decided in this Memorandum. Both appeals address CT Page 4444 the same December 18, 1991 decision of the Freedom of Information Commission (hereinafter, "FOIC").
These cases arise out of the determination by the FOIC that a binding arbitration hearing under the Teacher Negotiations Act (Conn. Gen. Stat. 10-153a et. seq., hereinafter "TNA") is a public agency meeting for purposes of the Freedom of Information Act (hereinafter, "FOIA"). Conn. Gen. Stat. 1-18a(b).
The appellants in this consolidated case are the Glastonbury Education Association (hereinafter "GEA"), the Commissioner of the State of Connecticut Department of Education and the three individual members of the Arbitration panels, Messrs. Blum, Deneen and Rovins.
The respondents are the FOIC, Kathleen Stack, James Hallas and The Glastonbury Citizen. Ms. Stack is the editor of The Glastonbury Citizen, which is a local newspaper. Mr. Hallas is the publisher of The Glastonbury Citizen who joined with Ms. Stack and the paper in filing the FOI complaint; which asserted that a binding arbitration hearing under the TNA concerning the Glastonbury teachers' contract, was subject to the FOIA.
The arbitration panel meeting at issue occurred on December 8, 1990, and was held pursuant to the TNA, specifically Conn. Gen. Stat. 10-153f. The subject of the arbitration panel hearing was a collective bargaining dispute between the GEA (the exclusive representative of Glastonbury teachers for collective bargaining purposes, Conn. Gen. Stat. 10-153g(a)(2)) and the Glastonbury Board of Education.
Ms. Stack sought to attend the meeting, but was excluded by a ruling from the arbitration panel.
On December 19, 1990, Ms. Stack initiated the FOI complaint with the assistance of Mr. Hallas and The Glastonbury Citizen Inc. This complaint went to a contested hearing before a hearing officer, FOIC Commissioner Dean Avery, on November 12, 1991. GEA was granted party status and participated in the hearing before Commissioner Avery; who issued his proposed finding and decision on November 29, 1991. The FOIC voted 3-2 to adopt Commissioner Avery's finding and decision on December 11, 1991. CT Page 4445
The GEA filed its appeal of such decision on January 9, 1992, and the State filed its appeal on February 11, 1992. The two cases were consolidated by the court on April 7, 1992.
A Motion to Intervene filed by Council No. 4 AFSCME AFL-CIO was granted on September 30, 1992.
The briefs and record were filed and the cases continued or oral argument on December 29, 1992.
Aggrievement of appellants was admitted and conceded. The interests of the appellants, apparent on the record, would also support findings of aggrievement, and jurisdiction of this court to entertain these appeals.
The appeals pursuant to Conn. Gen. Stat. 4-183 essentially claim that the FOIC decision is in violation of statutory provisions, Conn. Gen. Stat. 1-18a(b) and 1-19
(b)(9). Conn. Gen. Stat. 1-18a(b) provides in pertinent part that
 "`Meeting' means any hearing or proceeding of a public agency. . . . `Meeting' shall not include:. . . .; strategy or negotiations with respect to collective bargaining; . . . .
Conn. Gen. Stat. Sec. 1-19(b) provides that
 "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and sections 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . .; (9) records, reports and statements of strategy or negotiations with respect to collective bargaining;. . . ."
Both statutory provisions are exemptions from the public disclosure and open meeting requirements underlying the Connecticut Freedom of Information Act, Conn. Gen. Stat. 1-18a
et. seq.
The dispositive issue for these appeals is one of statutory construction. Do the statutory exemptions relating to collective bargaining "strategy or negotiations" apply to CT Page 4446 arbitration provisions pursuant to the Teachers Negotiations Act, Conn. Gen. Stat. 10-153f?
Judicial review of an administrative agency decision is governed by the Uniform Administrative Procedure Act [Conn. Gen. Stat. 4-106 — 4-189] and the scope of that review is restricted. Lawrence v. Kozlowski, 171 Conn. 705, 707 (1976) cert. denied 431 U.S. 969 (1977); Board of Pardons v. FOIC, 19 CA 539, 546 (1989). "The court's ultimate duty is only to decide whether, in light of the evidence, the (agency) has acted unreasonably, arbitrarily, illegally or in abuse of (its) discretion. Burnham v. Administrator, 184 Conn. 317, 322 (1981).
Pursuant to statute, Conn. Gen. Stat. 4-183(j)
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings."
The appellants essentially claim that the FOIC erroneously interpreted Conn. Gen. Stat. 1-18a(b) with respect to the definition of "meeting" and erred in finding factually that the last best offer binding arbitration hearings did not involve "strategy or negotiations with respect to collective CT Page 4447 bargaining." (Conn. Gen. Stat. 1-18a(b).
The resolution of these challenges requires a thorough consideration of the statutes under which the arbitration took place. The Teacher Negotiations Act, Conn. Gen. Stat.10-153, et. seq., deals with labor relations between regional or local boards of education and their certified [teaching and administrative] personnel. Conn. Gen. Stat. 10-153d(b) requires that boards of education negotiate with the representatives [unions] of such certified personnel "with respect to salaries, hours and other conditions of employment about which either party wishes to negotiate."
The Teacher Negotiations Act, like other public employee labor relations acts [Municipal Employees Relations Act, 7-474, et. seq. and State Employees Relations Act, 5-45, et. seq.] is modeled after the Connecticut Labor Relations Act, 31-101, et. seq. and the National Labor Relations Act. The purview of such acts, is the process known as "collective bargaining". The individual right to contract of the individual employee is subordinated to the collective right of all employees, expressed through a representative of all employees. Jones v. N.L.R.B., 320 U.S. 325.
The T.N.A. sets forth a scheme for the resolution of collective bargaining disputes whereby mandatory arbitration is substituted for the strike or lockout. Section 10-153e(a) prohibits strikes and 10-153e(b) and (c) mandate participation in negotiations, mediation and arbitration.
Conn. Gen. Stat. 10-153f establishes the procedure for mediation and arbitration of disputes which are not resolved through negotiations.
The "last best offer" arbitration model adopted by the legislature is set forth in Conn. Gen. Stat. 10-153
(c)(4). The most pertinent portion of that statute provides:
 "The decision of the arbitrators or the single arbitrator shall incorporate those items of agreement the parties have reached prior to its issuance. At any time prior to the issuance of a decision by the arbitrators or the single arbitrator, CT Page 4448 the parties may jointly file with the arbitrators or the single arbitrator, any stipulation setting forth contract provisions which both parties agree to accept."
From this language arises the concept of the "stipulated award." Where the parties agree to the terms of portions, if not all of the arbitrators' award.
The award of the arbitrators, even if stipulated, "shall not be subject to rejection by referendum." Conn. Gen. Stat. 10-153f(c)(4).
Stipulations being the consequence of agreement between the parties, are thus the result of collective bargaining negotiations.
The undisputed evidence before the FOIC establishes that the process involves multiple "last best offers" during the course of the arbitration process.
The Connecticut State Board of Labor Relations is charged with enforcing the TNA. The Labor Board has recognized in a formal opinion ". . .that negotiations often do continue during the arbitration stage." Branford Board of Education, Dec. No. 2274 (1984) at p. 7. Also, see New Canaan Board of Education, Dec. No. 2400 (1985).
The State Department of Education which administers the arbitration process has never considered arbitration a "meeting" for purposes of the FOIA, and there has been no attempt at compliance with the FOIA requirements. [T p. 20-21, November 12, 1991].
An earlier decision of the FOIC had also determined that the FOIA was not applicable to arbitration hearings, Fred Relford v. Town of Trumbull, et al. #FIC 79-246 (1980).
The decision which was adopted by the FOIC, and is at issue here; also recognizes that with respect to these arbitration hearings may and often do lead to further negotiation. . . ." R. Decision para. 15. The decision goes on in para. 16 to direct that actual negotiations as they occur can properly be conducted in private. In its brief, respondent argues that actual collective bargaining negotiations and CT Page 4449 strategy be held in private caucus.
If the exclusion mandated by legislature for "strategy and negotiations with respect to collective bargaining were so narrow, it would open mediation and negotiating sessions as well. The parties would be left to formulate positions in private caucus but articulate them in open meetings.
Clearly what the witnesses familiar with the process unanimously described was an arbitration process intimately involved with collective bargaining strategy and negotiations.
The goal of collective bargaining is the realization of an agreement in the form of a contract. The steps proceeding the agreement inevitably involve collective bargaining strategy and negotiations. This is just as true for the peculiar "last best offer" arbitration process which encompasses multiple last best offers and stipulated awards (which are nothing more than agreements disguised as awards to avoid local legislative perusal).
The FOIC erred in interpreting the statutory exemption of Conn. Gen. Stat. 1-18a(b) and in rendering a decision which is clearly erroneous in view of the substantial evidence on the whole record.
The appeals are sustained and the FOIC decision appealed from is reversed.
ROBERT F. McWEENY JUDGE, SUPERIOR COURT